REISSUED FOR PUBLICATION
SEP 1 2021
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
BRUCE A. LING Jr.,                *
                                  *    No. 20-61V
              Petitioner,         *    Special Master Christian J. Moran
                                  *
v.                                *
                                  *    Filed: August 17, 2021
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *    Dismissal; order to show cause
                                  *
              Respondent.         *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Bruce A. Ling, Jr., pro se, Tallahassee, FL, for petitioner;
Emilie Williams, United States Dep't of Justice, Washington, DC, for respondent.

## DECISION DENYING COMPENSATION[1]

 Bruce A. Ling, Jr. alleged that an influenza vaccination he received on November 8, 2011, caused him to develop Guillain-Barré syndrome ("GBS"). After two prior cases, Mr. Ling has not presented minimally competent evidence to substantiate his claim. Therefore, his claim is dismissed.

## I. Procedural History

 Mr. Ling submitted the petition for this case *pro se* on January 6, 2020. For the same November 8, 2011 vaccine, Mr. Ling has previously filed two other petitions: (1) a 2014 petition alleging an unspecified diagnosis that was dismissed on the merits, 2017 WL 3814649 (July 21, 2017), and (2) a 2018 petition alleging GBS that was dismissed for having a civil law suit pending at the same time, 145 Fed. Cl. 778, 784 (2019).

 While the current petition is largely the same as Mr. Ling's previous petitions, he has now asserted that Dr. Hantz Hercule diagnosed Mr. Ling with GBS at two December 2019 appointments. However, Mr. Ling only filed three pages of old medical records with the petition

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

and did not provide any medical records from Dr. Hercule. In his previous cases, Mr. Ling had not filed any medical records to establish a GBS diagnosis. Mr. Ling was ordered to file the medical records from Dr. Hercule to establish his GBS diagnosis. Order, issued Jan. 28, 2020.

In a filing received on February 10, 2020, Mr. Ling responded to the January 28, 2020 order. Among other issues raised by Mr. Ling, in regard to the merits of his petition, Mr. Ling stated that he "may not have actually received a GBS diagnosis on medical records." Pet'r's Resp. at 3. Mr. Ling represented that a conversation between Dr. Hercule and himself, which was recorded on a cell phone, substantiates the GBS diagnosis. Mr. Ling was ordered to file the medical records from Dr. Hercule and encouraged to submit a copy of this recording. Order, issued Mar. 12, 2020.

In a filing received on March 30, 2020, Mr. Ling stated that he had filed the requested medical records and a video recorded conversation with one of the doctors at a medical facility, Neighborhood Medical Center, in response to the March 12, 2020 order. Mr. Ling stated that these records and recording supported his GBS diagnosis. He also noted that "all recorded conversations of doctors and or witnesses were done with the knowledge and or consent." Upon review of the medical records submitted from Neighborhood Medical Center, the undersigned notes that Dr. Hantz Hercule did not diagnose Mr. Ling with GBS and even stated that "I inform patient that I cannot put a diagnosis on him." Exhibit B at 6.

Before the March 30, 2020 filing was received, a majority of the employees at the Court of Federal Claims began to work remotely due to the coronavirus pandemic. Consequently, this disruption also affected Clerk's Office employees who handle and process filings submitted by mail. While the submitted paper medical records have been placed on the docket, the Clerk's Office has conducted multiple searches but has been unable to locate the usb thumb drive submitted by Mr. Ling. Mr. Ling was requested to re-submit the usb drive containing the video recorded conversation. Order, issued June 22, 2020.

In a filing received on July 22, 2020, Mr. Ling explained that the video recording is on his old cell phone that is currently broken, and he cannot afford to repair it. It appeared that Mr. Ling had not served respondent with a copy of the March 30, 2020 filing or the usb drive. Respondent was ordered to advise whether he had been served with a copy of the usb drive. On August 6, 2020, respondent filed a status report indicating that he had not been served with a copy of Mr. Ling's usb drive.

Because Mr. Ling had not yet submitted any evidence to support his GBS diagnosis, he was ordered to file a status report on fixing his old cell phone or another method of obtaining the video-recorded conversation with Dr. Hercule. Order, issued Aug. 13, 2020.

In a filing received on September 22, 2020, Mr. Ling submitted a filing along with a usb drive that contained a video.[2] Throughout the video, the image does not show any people but

---

[2] The video shows a total length of 16 minutes and 24 seconds, but when playing the video the sound cuts out just after the 12 minute mark and the remainder of the video failed to play. Mr. Ling again did not appear to have provided a copy of the video to respondent. After

only displays some light and shadow.  Presumably, the camera was pointed at the ceiling or was covered by something.  For the audio, there are two voices on the recording that are not identified.  From context, one voice appears to be Mr. Ling, describing his medical history, and the other person is a doctor, asking questions.  There also is the sound of typing during the video, most likely the doctor or an assistant documenting the visit.  In the video, the conversation does not indicate a date that it occurred, but the name of the video file ("VID_20190814_153300") and the properties of the video file (Details tab, "Media created 8/14/2019 3:49 PM") both support that the conversation occurred on August 14, 2019.

In the video, Mr. Ling described his medical history and symptoms, but the doctor never offered a diagnosis.  While the final four minutes of the video did not play, the possibility that the complete duration of the video contained a diagnosis seems remote.  In his petition, Mr. Ling asserted that he received a GBS diagnosis in December 2019, but the video appears to be from August 14, 2019.  Moreover, all the medical records submitted by Mr. Ling do not contain a GBS diagnosis, which would comport with a recorded medical appointment that also does not contain a diagnosis.  On another matter, the video is concerning in the way in which it was obtained.[3]

---

the respondent confirmed via informal communications that he had not received a copy of the video, the Clerk's Office provided a copy of the video to respondent.

[3] While Mr. Ling stated that all recordings "were done with knowledge and or consent," the records from Neighborhood Medical Center refute that statement.  At a November 23, 2019 appointment, Dr. Hercule noted that "[Mr. Ling] had his camera on in the room without consent."  Exhibit A at 3.  At a December 5, 2019 appointment, Dr. Hercule told Mr. Ling to stop recording and strongly noted that, "I TOLD PATIENT THAT [RECORDING] WAS NOT APPROPRIATE AND TO NEVER DO THAT AGAIN AND HE IS SUBJECT TO BE DISCHARGE FROM THIS PRACTICE."  Exhibit B at 6.  At the beginning of a January 6, 2020 appointment, physician's assistant Lucilita Salvador noticed that Mr. Ling appeared to be recording and "advised [Mr. Ling] he can't record any portion of the visit because it is illegal."  Exhibit C at 9.  A letter dated January 8, 2020 discharged Mr. Ling as a patient from Neighborhood Medical Center citing, among other issues, that "[his] behavior toward our NMC providers and/or staff goes against our policies."  Exhibit D at 11.

Appointments at Neighborhood Medical Center, located in Tallahassee, Florida, are subject to Florida Law, including the prohibition against the "interception and disclosure of wire, oral, or electronic communications."  Fla. Stat. § 934.03.  This statute requires both parties to a conversation to consent to recording, making Florida a "two-party" state for consent to recordings.  In the context of medical appointment, a Federal Court of Appeals explained that an oral communication is protected by the Florida statute when one of people in the conversation has an expectation of privacy.  Woliner v. Summers, 796 F. App'x 649, 651 (11th Cir. 2019)  While the Court detailed a multi-factor test to determine whether a person had an expectation of privacy, the situation here is more straight forward because all the staff at Neighborhood Medical Center that Mr. Ling attempted to record explicitly told him to stop recording, that recording was against their office policy, and that recording was illegal.  The recording submitted by Mr. Ling appears to have been illegally obtained.

On October 19, 2020, Mr. Ling filed a notice of intent to remain in the vaccine program. Subsequently, on November 17, 2020, an order to show cause was issued.  In the order, the undersigned noted that "Without any evidence of a GBS diagnosis, Mr. Ling's case cannot continue."  To date, Mr. Ling has not submitted any evidence of a GBS diagnosis, and the medical records submitted explicitly state Dr. Hercule cannot give Mr. Ling a GBS diagnosis. The deadline for Mr. Ling to show cause why this case should not be dismissed was January 19, 2021.  Order, issued Nov. 17, 2020.

Ten days after the deadline, Mr. Ling responded, making the matter ready for adjudication.

## II.    **Method of Adjudication**

Special masters possess discretion to decide whether an evidentiary hearing will be held. 42 U.S.C. § 300aa-12(d)(3)(B)(v) (reflected in Vaccine Rule 8(c) & (d)).  In Kreizenbeck v. Sec'y of Health & Human Servs., 945 F.3d 1362, 1365 (Fed. Cir. 2018), the petitioners argued that because they objected to a ruling on the record, the appropriate procedure was a motion for summary judgment.  However, the Federal Circuit disagreed with this contention.  "[Vaccine] Rule 8(d) contemplates that special masters can decide cases on written submissions *other* than motions for summary judgment."  945 F.3d at 1366.

While the Federal Circuit recognized that special masters may resolve a case based on written submissions, the Federal Circuit also recognized that special masters "must 'afford[] each party a full and fair opportunity to present its case.'"  Id. at 1366, quoting Vaccine Rule 3(b)(2). Here, Ms. Ling has been allowed "a full and fair opportunity" to present evidence supporting his claim.  As detailed in the procedural history, the undersigned issued orders to guide the submission of evidence.

The deficiencies in the evidence, which are discussed below, is the basis for the dismissal.  Although Mr. Ling suggests some form of mistreatment, the outcome in Mr. Ling's case is based solely upon the (lack of) evidence.  Ms. Ling is not being punished for misconduct. His case is being dismissed because his evidence is not adequate.  In the sense of not presenting persuasive evidence, Mr. Ling is like other petitioners whose cases fall short of the evidentiary standard.

## III.   **Standards for Adjudication**

Petitioners are required to establish their case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required.  Bunting v. Sec'y of Health & Human Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

In attempting to carry their burdens, petitioners must rely upon "medical records or medical opinion."  42 U.S.C. § 300aa–13(a)(1).  When presenting a claim based upon the

4

Vaccine Injury Table, if the diagnosis is not apparent within the medical records, an expert's report is required to demonstrate the presence of an on-Table injury.  See Waterman v. Sec'y of Health & Human Servs., 123 Fed. Cl. 564, 574 (2015).  Similarly, for an off-Table case, petitioners must demonstrate, by a preponderance of the evidence, that they suffer from the injury for which they seek compensation.  Broekelschen v. Sec'y of Health and Human Servs., 618 F.3d 1339, 1346 (Fed. Cir. 2010).

## IV.  **Analysis**

Here, Mr. Ling alleges that the influenza vaccine caused him to suffer GBS.  Pet. page 6.[4] While the Vaccine Injury Table associates the flu vaccine with GBS, 42 C.F.R. § 100.3 ¶ XIV(D), Mr. Ling still must establish that he suffered from GBS.

Mr. Ling has not presented evidence showing that he suffered from GBS.  The evidence actually shows that medical personnel have refrained from diagnosing Mr. Ling with GBS. Exhibit B at 6 (Dr. Hercule: "I cannot put a diagnosis on him."); see also Pet. at 3 (discussing April 2, 2013 visit during which a nurse stated that he did not have GBS).

Mr. Ling recognizes that no medical record documents a diagnosis of GBS.  See Pet'r's Resp. to Order to Show Cause, filed Jan. 29, 2021, at 7-10.  Nevertheless, he maintains that GBS is an appropriate diagnosis.  Regardless of the sincerity of Mr. Ling's belief, the opinion of a lay person, not trained in medical diagnosis, cannot serve as the basis for a special master's finding regarding diagnosis.  42 U.S.C. § 300aa–13(a)(1).

Accordingly, Mr. Ling's petition is dismissed for a failure to present persuasive evidence regarding his diagnosis of GBS.[5]  The Clerk's Office is directed to enter judgment unless a motion for review is filed.  Information about the deadline for filing a motion for review can be found within the Vaccine Rules, which are posted on the Court's website.

**IT IS SO ORDERED.**

*Christian J. Moran*

Christian J. Moran
Special Master

---

[4] Mr. Ling also alludes to other claims, such as an allegation that government officials were deliberately indifferent to his health.  However, the jurisdiction of the Office of Special Masters is limited to considering whether certain vaccines harmed individuals.  42 U.S.C. § 300aa–12(d)(3)(A).

[5] In passing, Mr. Ling suggests that the undersigned recuse himself.  Pet'r's Resp. to Order to Show Cause at 14.  However, recusal is not appropriate.  See Liteky v. United States, 510 U.S. 540 (1994); Schultz v. Sec'y of Health & Human Servs., No. 16-539V, 2019 WL 6359139 (Fed. Cl. Spec. Mstr. Oct. 9, 2019).

.